DORSEY & WHITNEY LLP
Richard H. Silberberg
Anthony P. Badaracco
Joshua R. Kornfield
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff Canon U.S.A., Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CANON U.S.A., INC., <br><br> Plaintiff, <br><br> -v- <br><br> SYSOREX, INC., ASADUZ ZAMAN KHAN, WAYNE WASSERBERG, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** |

Plaintiff Canon U.S.A., Inc. ("Canon USA"), by its attorneys, Dorsey & Whitney LLP, for its Complaint against Defendants Sysorex, Inc. ("Sysorex"), Asaduz Zaman Khan ("Khan"), and Wayne Wasserberg ("Wasserberg") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Canon USA brings this action to enforce a default judgment (the "Judgment") entered on September 27, 2024 in this Court in favor of Canon USA and against an entity called Sysorex Government Services, Inc. ("SGS") in *Canon U.S.A.*, *Inc. v. Sysorex Government Services*, *Inc.*, No. 23-cv-8001(DLI)(LGD) (E.D.N.Y.) (the "Prior EDNY Action"). The Defendants in this case are SGS's parent company and its principals.

2. Defendants have abused SGS's corporate form in the process of defrauding Canon

-1-

4876-0664-6495\

USA. More specifically, they drained SGS of resources to deprive it of the opportunity to pay invoices that it indisputably owed to Canon USA, and then ignored Canon USA's attempts to collect because they had assured themselves that SGS would be judgment-proof.

3. This is not the first time that Defendants have engaged in a shell game to dodge paying Canon USA's legitimate invoices. Previously, they spun off a similar entity for the same nefarious purpose.

4. It would be a miscarriage of justice if Canon USA were unable to satisfy the judgment, and Defendants' actions leave no option other than for Canon USA to ask this Court to pierce SGS's corporate veil and impose liability on Defendants directly.

## PARTIES

5. Plaintiff Canon USA is a New York corporation having its principal place of business at One Canon Park, Melville, New York 11747.

6. Upon information and belief, Defendant Sysorex is a Virginia corporation having its principal place of business at 13880 Dulles Corner Lane, Suite 175, Herndon, Virginia 20171.

7. Upon information and belief, Defendant Wasserberg is the Chief Executive Officer of Sysorex, and resides in Miami, Florida. Wasserberg was at all relevant times an officer of Sysorex, and he managed the business operations of SGS before it became insolvent.

8. Upon information and belief, Defendant Khan is the President of Sysorex and the Chief Executive Officer of SGS, and resides in Herndon, Virginia. Khan was at all relevant times an officer of both Sysorex and SGS.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the action is between a citizen of the State of New York and citizens of

other states, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10. This Court has specific jurisdiction over Sysorex for purposes of this action pursuant to: (a) CPLR § 302(1) by virtue of Sysorex's transaction of business within the State of New York, through its subsidiary and *alter ego*, SGS, including SGS's entry into the relevant agreements with Canon USA within the State of New York; (b) Sysorex's subsidiary and *alter ego*'s irrevocable and unconditional consent to the personal jurisdiction of this Court in accordance with the forum-selection provision of the agreements;[1] and (c) CPLR § 302(3) due to Sysorex's commission of a tortious act outside of the State of New York causing injury to Canon USA within the State of New York.

11. This Court has specific jurisdiction over Wasserberg and Khan for purposes of this action pursuant to: (a) CPLR § 302(1) because they engaged in a transaction of business within the State of New York by causing SGS to enter the relevant agreements with Canon USA while knowing that SGS would breach the agreements by failing to make payments to Canon USA when due; and (b) CPLR § 302(3) due to their commission of a tortious act outside of the State of New York causing injury to Canon USA within the State of New York.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and because Defendants' subsidiary and *alter ego*, SGS, irrevocably and unconditionally consented to the designation of this Court as a proper venue for any lawsuit arising from the agreements.

## FACTUAL BACKGROUND

13. Canon USA imports, markets, distributes, and sells genuine Canon-branded

---

[1] The agreements that SGS entered into with Canon USA provide that they are "made within the State of New York" and that the "[a]greement[s] and any dispute, claim or controversy between the parties arising out of or relating to th[e] [a]greement[s] will be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws provisions." In addition, the agreements provide that SGS "consents to the exclusive jurisdiction and venue of the federal and state courts located in Suffolk County, New York."

products intended for use and resale in the United States.  Canon USA is the exclusive wholesale distributor of Canon-branded products, including Canon-brand SecurPASS full body scanners, in North America.

14.	Canon USA offers service, maintenance, and repair services to its customers for Canon-brand equipment including Canon-brand SecurPASS full body scanners.

15.	Before it became insolvent, SGS provided security and technology services for Canon-brand SecurPASS full body scanners to its federal and state law enforcement customers through arrangements with providers like Canon USA, including to the United States Department of Justice's Bureau of Prisons and the Sherriff's Office of Fayette County, Ohio.

**The Agreements Between Canon USA and SGS**

16.	In late 2022 and early 2023, Canon USA was informed that SGS had secured large contracts with the United States Department of Justice's Bureau of Prisons and the Sherriff's Office of Fayette County, Ohio for service and replacement part coverage for Canon USA-brand SecurPASS full body scanners (the "Scanners").

17.	Canon USA thereafter entered into written agreements with SGS ("Agreements"), pursuant to which SGS agreed to pay Canon USA for service and replacement part coverage for the Scanners that SGS was responsible for providing to its law enforcement customers.

18.	Upon information and belief, Wasserberg directed SGS to enter into the Agreements and/or was responsible for SGS's entry into the Agreements. Khan signed both Agreements in his capacity as President of SGS.

19.	Canon USA entered into the Agreements with SGS only after receiving explicit assurances from both Khan and Wasserberg than SGS would pay the invoices issued pursuant to the Agreements in full and on time.

20. Upon information and belief, Khan and Wasserberg knew that their assurances were false when made, but nevertheless made the assurances to fraudulently induce Canon USA to enter into the Agreements.

21. Upon information and belief, Khan and Wasserberg knew at the time that the assurances were made that SGS would not be in a position to pay Canon USA's invoices because they intended to divert the revenue that would be paid by SGS's law enforcement customers for the services that Canon USA would provide to other entities that Khan and Wasserberg controlled.

22. Canon USA reasonably relied upon the assurances made by Khan and Wasserberg in entering into the Agreements.

23. Upon information and belief, SGS was paid in full by the United States Department of Justice's Bureau of Prisons and the Sherriff's Office of Fayette County, Ohio under its contracts with them.

24. Shortly after SGS entered into the second of the two Agreements in March 2023, Defendants—indifferent to the damages that Canon USA would suffer—caused SGS to default on its payment obligations to Canon USA under both Agreements.

25. Both Agreements provide that "[i]f payment is delinquent and cannot be collected on demand or during the cure period . . ., [SGS] agrees to pay all costs and expenses incurred by [Canon USA], including, without limitation, reasonable attorney's fees and court costs, in connection with [Canon USA's] efforts to collect any payment due . . . ."

**The Prior EDNY Action, SGS's Default, and Post-Judgment Enforcement**

26. On October 26, 2023, Canon USA filed suit against SGS in this Court, alleging that SGS breached the Agreements and seeking recovery of its unpaid invoices, plus late fees, interest, attorneys' fees, and associated costs. *See Canon U.S.A., Inc. v. Sysorex Government Services, Inc.*,

No. 23-cv-8001(DLI)(LGD) (E.D.N.Y.).

27. On October 27, 2023, Khan received Canon USA's complaint against SGS and told the process server that he was authorized to accept service on behalf of SGS. *See id.* at Dkt. 7.

28. Nevertheless, SGS failed to appear or respond to the Complaint. SGS, Khan, and Wasserberg saw no need to respond to the Complaint because they knew that any judgment entered against SGS would be worthless because they had rendered SGS insolvent by diverting the revenue that otherwise would have been used to pay Canon USA's invoices.

29. On December 4, 2023, the Clerk of the Court entered a certificate of default against SGS. *See id.*, Dkt. 10. SGS, Khan, and Wasserberg ignored the certificate, knowing that SGS had no real monetary exposure as a result of being rendered insolvent.

30. On January 25, 2024, Canon USA filed a motion for the entry of a default judgment against SGS. Canon USA emailed Wasserberg and Khan a copy of the motion at their respective sysorexinc.com email addresses. Canon USA also served copies of the motion upon SGS at its corporate headquarters via FedEx. *See id.*, Dkt. 12. SGS, Khan, and Wasserberg ignored the motion.

31. On May 1, 2024, U.S. Magistrate Judge Lee Dunst issued a Report and Recommendation recommending that the Court grant Canon USA's motion for default judgment and award attorneys' fees and costs to Canon USA.

32. On May 2, 2024, Canon USA promptly served a copy of the Report and Recommendation upon SGS at its corporate address. *See id.*, Dkt. 15.

33. On September 26 and 27, 2024, this Court adopted the Report and Recommendation, entered a default judgment on behalf of Canon USA, and awarded Canon USA the sum of $782,162.27, including the outstanding amount owed under the Agreements, late fees,

attorneys' fees, and pre-judgment interest, with post-judgment interest running from September 27, 2024. A copy of the Judgment is annexed hereto as Exhibit A.

34. The Court directed Canon USA to serve a copy of its Order adopting the Report and Recommendation and to file proof of service with the Court. As instructed, on September 27, 2024, Canon USA personally served the Order upon SGS. Khan received the Order on behalf of SGS. *See id.*, Dkt. 18.

35. On the same day, Canon USA personally served a copy of a Restraining Notice and Information Subpoena upon SGS. Khan received it on behalf of SGS. Pursuant to CPLR § 5224(3), SGS's responses to the Information Subpoena were due seven (7) days after service, *i.e.*, on October 8, 2024. SGS, Khan, and Wasserberg ignored the information subpoena and restraining notice.

36. As of the filing of this Complaint, SGS has not complied with Canon USA's post-judgment discovery, nor has it paid any part of the Judgment.

**Defendants Depleted SGS of its Assets to Defraud Canon USA**

37. SGS is the corporate *alter ego* of Sysorex.

38. Upon information and belief, SGS and Sysorex share the same office space, employees, revenues, lines of business, and management.

39. On May 5, 2022, Sysorex issued a press release stating that SGS had invoiced nearly $9,000,000, which allowed Sysorex to realize more than $750,000 in profit.[2]

40. In its Q2 2023 Form 10-Q, Sysorex did not even purport to have a separate business from SGS, asserting that "Sysorex, Inc., through its wholly owned subsidiary, Sysorex Government Services, Inc. ('SGS'), provides information technology solutions primarily to the

---

[2] https://www.sec.gov/Archives/edgar/data/1737372/000121390022024148/ea159456ex99-1_sysorexinc.htm.

public sector." Sysorex, Q2 2023 Form 10-Q at Note 1.

41. Khan and Wasserberg effectively run Sysorex and SGS as a single entity, with no regard for maintaining separate corporate formalities, with each officer swapping roles and responsibilities at each company.

42. For example, on August 31, 2018, Khan entered a single employment agreement with both Sysorex and SGS, to serve as the CEO of Sysorex and the President of SGS. Pursuant to that agreement, both Sysorex and SGS are jointly responsible for Khan's base salary and business expenses.

43. In addition to being employed by both entities, Khan has been both CEO and President of both entities at varying points.

44. Even though Wasserberg is not an officer of SGS and, upon information and belief, is not even employed by SGS, he was Canon USA's contact with SGS when Canon USA demanded payment under the Agreements. For example, on August 2, 2023, Wasserberg, on behalf of SGS, assured Canon USA that SGS was committed to the "timely fulfilment of Canon's outstanding obligations[.]" This was an empty assurance; SGS never paid Canon USA.

45. Wasserberg also acknowledged to Canon USA that Sysorex would be responsible for ensuring that Canon USA's outstanding invoices to SGS were paid. Specifically, on August 17, 2023, Wasserberg assured Canon USA that "Sysorex, Inc., the parent entity is committing to ensure that this debt is paid ([Bureau of Prison] contract year 10/01/2022 – 09/30/2023)."

46. This is not the first time that Kahn has created different corporate shells to evade financial obligations to Canon USA. In 2017, Khan rebranded a different company formerly known as Sysorex and named it Inpixon. Inpixon accrued $3,688,390.28 in indebtedness to a then-subsidiary of Canon USA named Virtual Imaging, Inc. ("Virtual Imaging"), but refused to pay.

As a result, Virtual Imaging was forced to commence a lawsuit (*Virtual Imaging, Inc. v. Integrio Technologies, LLC, et al.*, Case No. 1:17-cv-01477 (E.D. Va.)).  While the deadline to respond to the complaint was pending, Inpixon filed a Form 424(b)(5) with the U.S. Securities and Exchange Commission acknowledging the lawsuit and stating that the "Company has not yet responded to such complaint." Virtual Imaging was forced to expend significant resources in litigation and mediation to force Inpixon to honor its clear contractual obligations.

47. In that case, notwithstanding the fact that Inpixon promised the court in its request to set aside a default that it had meritorious defenses to Virtual Imaging's breach of contract claim, Inpixon later admitted in response to Virtual Imaging's request for admission that it owed the full amount that Virtual Imaging claimed:

> **REQUEST NO. 225**: Admit that the principal amount of $3,688,390.28 remains outstanding and overdue on the Purchase Orders collectively annexed hereto as Exhibit A and the Invoices collectively annexed hereto as Exhibit B.
>
> **RESPONSE**: Subject to and without waiver of the foregoing objections, Inpixon Federal admits the foregoing request.

48. Despite acknowledging that it owed Virtual Imaging the full amount of the debt, Inpixon persisted in engaging in frivolous discovery practice, noticing a Rule 30(b)(6) deposition of Virtual Imaging with approximately twenty examination topics, and promulgating dozens of irrelevant document requests and interrogatories, in an effort to increase Virtual Imaging's litigation costs.  Defendants are engaged in the same cynical gamesmanship here.

49. Defendants are indifferent to their contractual obligations and repeatedly abuse the corporate form to shirk such obligations.

50. Upon information and belief, despite being aware of the lawsuit and the Judgment, Sysorex has calculated that if it allows its subsidiary to default and prevents compliance with post-

judgment discovery, perhaps SGS's creditors will go away.

51. SGS would have had the means to pay the Canon USA invoices due under the Agreements if Defendants did not siphon money away from SGS to leave it undercapitalized and insolvent. In a press release dated November 16, 2022, Sysorex reported that as of September 30, 2022, SGS had generated revenues of approximately $12 million, with approximately $2.1 million in profit. In the fourth quarter of 2022, SGS had booked $13 million in new orders.[3]

52. Most significantly, bank records that Canon USA has obtained through post-judgment discovery directed at SGS' bank in the Prior EDNY Action indicate that, since May 2, 2024 (the date on which Canon USA served SGS with a copy of the Court's Report and Recommendation on Canon USA's motion for default judgment), $1,860,131.72—easily exceeding the value of the Judgment—has been transferred out of SGS's primary checking account. Upon information and belief, Defendants transferred those funds out of the account (including a significant portion that was transferred to another account controlled by Defendants) in order to evade the Judgment and SGS's other liabilities.

53. Upon information and belief, Defendants intended to accomplish that objective when they entered into the Agreements with Canon USA.

54. Upon information and belief, SGS became undercapitalized and insolvent when the transfers from SGS to Sysorex and/or related entities were made, and SGS did not receive reasonably equivalent value in exchange for the transfers.

55. Defendants' scheme, and their decision to ignore the Prior EDNY Action and Canon USA's post-judgment discovery requests and restraining notice, has forced Canon USA to incur additional attorneys' fees and other costs. As SGS's *alter egos*, Defendants are liable for

---

[3] https://www.globenewswire.com/news-release/2022/11/16/2557201/0/en/Sysorex-Reports-Growth-in-Government-Services-Business-and-Broadening-of-Its-Data-Center-Business.html, *last visited on* October 18, 2024.

Canon USA's costs of collection under the Agreements, including the attorneys' fees and costs associated with Canon USA's post-judgment discovery, and the attorneys' fees and costs associated with this lawsuit.

## CAUSES OF ACTION

### COUNT I
**(Against Sysorex, Inc. - Enforcement of the Judgment Based on Alter Ego Liability)**

56. Canon USA repeats and realleges each and every allegation set forth above as though fully set forth herein.

57. At all relevant times, Sysorex was the *alter ego* of SGS and is, therefore, liable for the Judgment.

58. Sysorex deliberately rendered SGS undercapitalized and insolvent such that it cannot pay Canon USA's invoices or pay what it owes Canon USA under the Judgment.

59. Sysorex siphoned revenues from SGS and ignored SGS's corporate form, thereby wrongfully profiting from the revenues derived from the transactions that are the subject of SGS's Agreements with Canon USA while avoiding paying what it owes Canon USA.

60. By abusing SGS's corporate form, Sysorex has damaged Canon USA and should, therefore, be held liable for the amount due under the Judgment.

### COUNT II
**(Fraud – Against Khan and Wasserberg)**

61. Canon USA repeats and realleges each and every allegation set forth above as though fully set forth herein.

62. Khan and Wasserberg explicitly assured Canon USA that SGS would pay the invoices issued pursuant to the Agreements in full and on time. Wasserberg also assured Canon USA that Sysorex would satisfy any outstanding debts owed by SGS.

63. Defendants continued to offer such assurances after the parties entered into the

Agreements. For example, on August 2, 2023, Wasserberg assured Canon USA that SGS was committed to the "timely fulfilment of Canon's outstanding obligations[.]"

64. And on August 17, 2023, Wasserberg assured Canon USA that "Sysorex, Inc., the parent entity is committing to ensure that this debt is paid ([Bureau of Prison] contract year 10/01/2022 – 09/30/2023)."

65. However, Khan and Wasserberg knew that these assurances were false when made.

66. But for Khan and Wasserberg's assurances that SGS would comply with its payment obligations, Canon USA would not have entered into the Agreements, in light of its previous experience with Sysorex and Inpixon.

67. Khan and Wasserberg's false representations caused Canon USA to sustain damages in an amount to be determined at trial but, in any event, not less than the amount of the Judgment.

## COUNT III
**(Fraudulent Transfer – Against All Defendants)**

68. Canon USA repeats and realleges each and every allegation set forth above as though fully set forth herein.

69. To avoid paying creditors like Canon USA, Defendants siphoned money from SGS, without providing reasonably equivalent value in return.

70. Specifically, following the Court's entry of its Report and Recommendations on Canon USA's motion for a default judgment in the Prior EDNY Action, Defendants transferred out of SGS's primary checking account sums of money that would easily have sufficed to satisfy the Judgment.

71. These transfers out of SGS were made when SGS was undercapitalized and rendered it insolvent, and incapable of paying the debts it owed to creditors like Canon USA.

72. Defendants' fraudulent transfers from SGS caused Canon USA damages in an amount to be determined at trial but, in any event, not less than the amount of the Judgment.

## COUNT IV
**(Unjust Enrichment – Against All Defendants)**

73. Canon USA repeats and realleges each and every allegation set forth above as though fully set forth herein.

74. In the alternative, as a result of avoiding paying debts that their *alter ego*, SGS, owed to Canon USA, but receiving the revenues derived from the Agreements with Canon USA, Defendants were enriched at Canon USA's expense.

75. It would be against equity and good conscience for Defendants to retain the benefits of their *alter ego*'s Agreements with Canon USA without paying Canon USA what it is owed.

76. Thus, Defendants were unjustly enriched in an amount to be determined at trial but, in any event, not less than the amount of the Judgment.

**WHEREFORE**, Canon USA prays for the entry of a judgment against Sysorex, Khan, and Wasserberg as follows:

1. Awarding Canon USA compensatory damages of not less than the sum of $782,162.27, plus post-judgment interest running from September 27, 2024, along with any additional late fees and interest;

2. Awarding Canon USA its reasonable attorneys' fees and the associated costs and expenses incurred by Canon USA in connection with its preparation, filing, and prosecution of this action, and in connection with post-judgment discovery in the Prior EDNY Action; and

3. Awarding Canon USA such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>November 19, 2024 | DORSEY & WHITNEY LLP<br><br>By: */s/ Anthony P. Badaracco*<br>Richard H. Silberberg<br>Anthony P. Badaracco<br>Joshua R. Kornfield<br>DORSEY & WHITNEY LLP<br>51 West 52nd Street<br>New York, New York 10019<br>(212) 415-9200<br><br>*Attorneys for Plaintiff*<br>*Canon U.S.A., Inc.* |